# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

| | |
|---|---|
| Cathy George, | |
| *Plaintiff*, | Case No. 1:25-cv-6059-JPB |
| v. | |
| DeKalb County Sheriff's Office Deputy and U.S. Marshals Service Special Deputy Ja'Rad L. Hunt; Fourteen Unknown Law Enforcement Officers; and John Does, all sued in their individual capacities, | |
| *Defendants*. | |

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Andrew Canter
Georgia Bar No. 365212

Zack Greenamyre
Georgia Bar No. 293002

MITCHELL, SHAPIRO,
GREENAMYRE & FUNT LLP
881 Piedmont Ave.
Atlanta, GA 30309
404-812-4747 (phone)
404-812-4740 (fax)
zack@mitchellshapiro.com
andrew@mitchellshapiro.com

John C. Korevec*
California Bar No. 310157
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
(703) 682-9320
jkorevec@ij.org

Marie L. Miller*
Indiana Bar No. 34591-53
Arizona Bar No. 040537
INSTITUTE FOR JUSTICE
3200 N. Central Ave., Ste. 2160
Phoenix, AZ 85012
(480) 557-8300
mmiller@ij.org

*Admitted *pro hac vice*

*Counsel for Plaintiff*

# TABLE OF CONTENTS

*Page*

Table of Authorities ................................................................................. iii

Introduction.............................................................................................1

Background ..............................................................................................4

Legal Standard........................................................................................6

Argument.................................................................................................7

I.   The Court should not dismiss Counts 1 and 2 because the complaint more than adequately alleges—including in the alternative—that Officer Hunt acted under color of state law................................................7

II.  The Court should not dismiss Counts 3 and 4 because both are viable under *Bivens*. ................................................................................. 15

    a.  The Westfall Act confirms that these claims remain viable. ........... 15

    b.  Even under the modern *Bivens* framework, Ms. George's claims should proceed because they do not present a new *Bivens* context. ................................................................................. 16

III. The Court should not dismiss Counts 5–13 because the claims fall outside the FTCA and, thus, no party has moved to dismiss them. ....... 20

Conclusion ............................................................................................ 25

*Page(s)*

**CASES**

*Abella v. Rubino,*
63 F.3d 1063 (CA11 1995) ........................................................................ 14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................6

*Askew v. Bloemker,*
548 F.2d 673 (CA7 1976) ..................................................................... 11–12

*Bell Atl. Co. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................6

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
403 U.S. 388 (1971) ............................................................................. 1, 16

*Bressi v. Ford,*
575 F.3d 891 (CA9 2009) ........................................................................ 12

*Buchanon v. Barr,*
71 F.4th 1003 (CADC 2023) ............................................................... 22, 24

*Charles v. Johnson,*
18 F.4th 686 (CA11 2021) ..........................................................................9

*Couden v. Duffy,*
446 F.3d 483 (CA3 2006) ........................................................................ 11

*Creech v. Tewalt,*
84 F.4th 777 (CA9 2023) ......................................................................... 25

*Daniel v. United States,*
891 F. Supp. 600 (N.D. Ga. 1995) ........................................................... 24

*Davis v. Passman,*
442 U.S. 228 (1979) ................................................................................ 16

*De Martinez v. Lamagno,*
515 U.S. 417 (1995) ................................................................................ 23

*Egbert v. Boule,*
    596 U.S. 482 (2022) ............................................................ 16, 18–20

*Gonzalez-Gonzalez v. United States,*
    257 F.3d 31 (CA1 2001) ............................................................ 25

*Guerrero v. Scarazzini,*
    274 F. App'x 11 (CA2 2008) ...................................................... 14

*Hampton v. Hanrahan,*
    600 F.2d 600 (CA7 1979) .......................................................... 11

*Hernandez v. Mesa,*
    589 U.S. 93 (2020) ...................................................... 15, 18, 22

*Hicks v. Ferreyra,*
    64 F.4th 156 (CA4 2023) ......................................................... 19

*Hindes v. FDIC,*
    137 F.3d 148 (CA3 1998) .......................................................... 10

*Jakuttis v. Town of Dracut,*
    95 F.4th 22 (CA1 2024) ........................................................... 14

*King v. United States,*
    917 F.3d 409 (CA6 2019) .......................................................... 14

*Kletschka v. Driver,*
    411 F.2d 436 (CA2 1969) .......................................................... 10

*Knights of the Ku Klux Klan v. E. Baton Rouge Par. Sch. Bd.,*
    735 F.2d 895 (CA5 1984) .......................................................... 11

*Lake Country Estates, Inc. v. Tahoe Reg'l Plan. Agency,*
    440 U.S. 391 (1979) ................................................................ 11

*Linder v. United States,*
    937 F.3d 1087 (CA7 2019) ......................................................... 24

*Loe v. Armistead,*
    582 F.2d 1291 (CA4 1978) ......................................................... 16

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982) ................................................................ 9, 10

*Martinez v. Winner*,
  771 F.2d 424 (CA10 1985) ............................................................ 10

*McCollum v. Bolger*,
  794 F.2d 602 (CA11 1986) ............................................................ 24

*McLeod v. United States*, No. 1:20-cv-595-JB-MU,
  2021 WL 5906373 (S.D. Ala. Dec. 14, 2011) ............................... 12

*Mohamud v. Weyker*,
  144 F.4th 1099 (CA8 2025) ...................................................... 13–14

*Montgomery v. Looney*, No. 23-00131-TFM-B,
  2025 WL 2626125 (S.D. Ala. Jan. 16, 2025) ............................ 12–13, 15

*NeSmith v. Fulton*,
  615 F.2d 196 (CA5 1980) ............................................................... 10

*Noem v. Vasquez Perdomo*,
  146 S. Ct. 1 (2025) ....................................................................... 19

*Pretka v. Kolter City Plaza II, Inc.*,
  608 F.3d 744 (CA11 2020) ........................................................... 22

*Roberson v. United States*,
  249 F.2d 737 (CA5 1957) ............................................................. 18

*Robinson v. Sauls*,
  102 F.4th 1337 (CA11 2024) .................................................... 12, 18

*Rodriguez v. Ritchey*,
  539 F.2d 394 (CA5 1976) ............................................................. 16

*S. Pilot Ins. Co. v. CECS, Inc.*,
  15 F. Supp.3d 1284 (N.D. Ga. 2013) ......................................... 2, 6

*Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control &*
  *Prevention*, 623 F.3d 1371 (CA11 2010) .......................................6

*St. George v. Pinellas County,*
285 F.3d 1334 (CA11 2002) ........................................................... 15

*Strickland v. Shalala,*
123 F.3d 863 (CA6 1997) ........................................................... 10–11

*Thai v. County of Los Angeles,*
127 F.4th 1254 (CA9 2025) ........................................................... 12

*Watts v. Fla. Int'l Univ.,*
495 F.3d 1289 (CA11 2007) ...........................................................6

*Westfall v. Erwin,*
484 U.S. 292 (1988) ........................................................... 23

*Wilkie v. Robbins,*
551 U.S. 537 (2007) ........................................................... 24

*Ziglar v. Abbasi,*
582 U.S. 120 (2017) ........................................... 16–17, 19–20

**STATUTES & RULES**

28 U.S.C. § 1331 ........................................................... 21

28 U.S.C. § 1346(b)(1) ........................................................... 21

28 U.S.C. § 2675(a) ...........................................................6

28 U.S.C. § 2679(b)(2)(A) ........................................... 2–3, 15, 21–24

28 U.S.C. § 2679(d)(1) ........................................................... 24

42 U.S.C. § 1983 ........................................................... 1, 7, 10

Reorganization Plan No. 1 of 1968, 33 Fed. Reg. 5611 § 4,
*reprinted in* 82 Stat. 1367 (1968) ........................................... 17

Fed. R. Civ. P. 8(d)(2)–(3) ...........................................................8

Fed. R. Civ. P. 12(b)(1) ...........................................................7

Fed. R. Civ. P. 12(b)(6) ...........................................................6

This is a civil-rights case arising from unconstitutional conduct. A team of law enforcement officers led by DeKalb County Sheriff's Deputy Ja'Rad Hunt raided Cathy George's home before dawn, looking for a suspect who was already in custody. Ms. George had no connection to the suspect. Still, officers pulled her out of her apartment at gunpoint, barged in, and searched her home. They also searched her phone for photos—without a warrant. Admitting their error, they left Ms. George with no explanation for the terrifying raid.

To redress the violations of her rights under the Fourth, Fifth, and Fourteenth Amendments, Ms. George brought claims against the officers in their individual capacities. Whether the officers acted under color of state law, federal law, or both is not yet known, so Ms. George brought two sets of claims:

- For the officers' unconstitutional conduct under color of state law, Ms. George brought claims under 42 U.S.C. § 1983 (Counts 1 & 2);

- For the officers' unconstitutional conduct under color of federal law, she brought claims under:

    o *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (Counts 3 & 4);

    o The Westfall Act's codification of *Bivens* as of 1988 (Counts 5 & 6); and

    o Traditional state remedies for unconstitutional acts (Counts 7–13).

1

Ms. George recently moved for leave to file a First Amended Complaint, which adds new claims against a new defendant: claims under the Federal Tort Claims Act (FTCA) against the United States. (Docs. 20, 20-2.) If the Court allows that amendment (as it should, *see* Doc. 20-1), the filing of the First Amended Complaint will moot the motion to dismiss (Doc. 13). *See S. Pilot Ins. Co. v. CECS, Inc.*, 15 F. Supp.3d 1284, 1287 n.1 (N.D. Ga. 2013).

As Ms. George explained in her complaint and in her motion for leave to amend, her original complaint asserted no claims under the FTCA—only constitutional claims that the Westfall Act carved out from the FTCA. *See* 28 U.S.C. § 2679(b)(2)(A). That is because, when Ms. George filed the complaint, she was still in the process of exhausting an administrative claim that, once denied, would ripen into FTCA claims against the United States. (Doc. 1 at ¶ 6.[1]) Ms. George also did not serve her complaint on any defendants other than Officer Hunt, because she does not yet know who they are; their government employers have kept their identities hidden.

As a result, Officer Hunt is the only proper party defendant. He moved to dismiss four of the thirteen counts against him (Counts 1–4). For Counts 1 and 2, he contends that Ms. George cannot sue him under Section 1983 because—he says—he was acting as a deputized member of a U.S. Marshals task

---

[1] Unless specified otherwise, paragraph citations (¶) refer to the original complaint (Doc. 1).

force, which prevents him from acting under color of state law, a requirement for Section 1983 liability. He then claims that he cannot be sued under *Bivens*, either, because his conduct arose in a "new context" and "special factors" counsel against recognizing a *Bivens* remedy on these facts. (Doc. 13 at 11.)

Although the United States is not a proper party, it stepped into Officer Hunt's motion to dismiss to argue that "to the extent" Ms. George asserted claims under the FTCA, those claims were premature. (*Id.* at 2.) The government's argument mischaracterizes Counts 5–13 as premature FTCA claims and argues they should be dismissed on that basis.

This Court should deny the motion as moot if the Court grants Ms. George's motion for leave to amend (Doc. 20). Otherwise, this Court should deny the motion to dismiss because:

(1) Ms. George more than adequately pleaded, including in the alternative, that Officer Hunt acted under color of state law, so her Section 1983 claims should proceed (Counts 1 & 2);

(2) Ms. George's case does not present a "new *Bivens* context," and, even if it did, no special factors counsel hesitation in recognizing a remedy directly under the Fourth and Fifth Amendments (Counts 3 & 4); and

(3) Ms. George's claims under 28 U.S.C. § 2679(b)(2)(A) (Counts 5 & 6) and her claims seeking traditional state-law remedies for constitutional violations (Counts 7–13) fall outside the FTCA, so they were timely filed.

## BACKGROUND

Before dawn on October 24, 2023, at least fifteen heavily armed law enforcement agents arrived at an upscale condominium building where Ms. George lived in Sandy Springs, Georgia. (¶¶ 31–32, 36.) The officers sought to apprehend a suspect, Joshua Smiley, who had been arrested four months earlier and remained behind bars. (¶¶ 22, 55.) The U.S. Marshals Service and news outlets had publicly reported on his capture. (¶¶ 23–24, 28.)

Still, a team of officers targeted Cathy George's apartment to search for Smiley. Most or all the officers wore clothing that said "SHERIFF." (¶ 39.) They were led by Officer Ja'Rad Hunt, a DeKalb County Sheriff's Deputy and a cross-deputized agent of the U.S. Marshals Service. The extent to which Officer Hunt and the other officers acted under color of state law, federal law, or both remains unknown. (¶¶ 98–110.)

At Ms. George's apartment, officers pounded on her door and shouted: "Open the door now, motherfucker! Come out with your hands up, now!" (¶¶ 42, 46, 49.) Jolted awake and terrified, Ms. George followed her small dog to the door; she and the dog were the apartment's only occupants and residents. As Ms. George opened the door, officers aimed laser-equipped firearms at her, pulled her (nearly naked) out of her apartment, and demanded that she tell them where she was hiding "Josh Smiley." (¶¶ 50–58.) Ms. George had no clue who he was and had no connection to Smiley. (¶¶ 55–56, 81–82.)

4

Some officers held Ms. George in the hallway for 15 to 20 minutes while others ransacked her home. (¶¶ 54–60, 77.) Officers then demanded to see photos of her sons, who did not live there. (¶¶ 60–61.) Believing she had no choice, Ms. George complied, showing them pictures on her phone. (¶¶ 62–66.) Seeing that Smiley was not in the pictures, Officer Hunt admitted to Ms. George that there had been a mistake. (¶¶ 67–69.) He left her with a business card—but without a warrant, an explanation, or an apology. (¶¶ 71–76.) The trauma Ms. George suffered is long-lasting. (¶¶ 111–17.)

On October 10, 2025, Ms. George submitted an administrative claim to the U.S. Marshals Service, using Standard Form 95. (¶ 6.) On October 22, 2025, she filed this case against Officer Hunt and other officers, whose identities remain undisclosed, all in their individual capacities. (¶¶ 13–15.) All the claims in the operative complaint seek redress for the officers' violations of Ms. George's rights under the Fourth, Fifth, and Fourteenth Amendments.

On March 13, 2026, the United States purported to substitute in for Officer Hunt "as to the Federal Tort[] Claims Act claims against him." (Doc. 12.)

Five days later, the United States filed an "Amended Notice of Substitution" for Officer Hunt, "to clarify that the substitution . . . is limited to Counts 7 through 13." (Doc. 16 at 1 & n.1.)

On April 10, 2026, Ms. George's administrative claim was exhausted and she deemed it denied, because the U.S. Marshals Service did not resolve it

5

within six months, *see* 28 U.S.C. § 2675(a). That exhaustion gave birth to new claims—FTCA claims against the United States—and prompted Ms. George's filing of her motion for leave to amend. (*See* Doc. 20-2 (Counts 14–15).) Again, amendment would moot the motion to dismiss at issue, which concerns the original complaint only. *See S. Pilot*, 15 F. Supp.3d at 1287 n.1.

LEGAL STANDARD

Officer Hunt moved under Rule 12(b)(6) to dismiss Counts 1–4.[2] The standard for Rule 12(b)(6) is familiar: the Court must accept the complaint's well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff—here, Ms. George. *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (CA11 2010).

A complaint states a claim when it "contain[s] sufficient factual matter, accepted as true," to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]" of the claims. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296–97 (CA11 2007) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 556 (2007)).

---

[2] To state the obvious, the other officers have not moved to dismiss any claims, as they have not been served. Ms. George moved to extend the time to serve them because their employers have concealed their identities. (*See* Doc. 11.)

The United States purportedly moved to dismiss Counts 5–13 under Rule 12(b)(1), mischaracterizing those counts as premature FTCA claims over which this Court lacks jurisdiction. But Rule 12(b)(1) is not properly at issue for the reasons explained in Part III, below.

**ARGUMENT**

**I.    The Court should not dismiss Counts 1 and 2 because the complaint more than adequately alleges—including in the alternative—that Officer Hunt acted under color of state law.**

Counts 1 and 2 allege that Officer Hunt is liable under 42 U.S.C. § 1983 for violating Ms. George's Fourth and Fourteenth Amendment rights "under color of [state law]." 42 U.S.C. § 1983. Officer Hunt does not argue that the complaint fails to allege constitutional violations—only that Section 1983 does not apply because (he says) he acted exclusively under color of federal law. (Doc. 13 at 5–6.) His argument proceeds as follows: because he was cross-deputized as a Special Deputy U.S. Marshal, he must have been acting solely in a federal capacity when he led the raid on Ms. George's home; therefore, he did not act under color of state law, and Section 1983 does not apply. (*Id.*)

This reasoning is flawed. It rests on factual assumptions that contradict the complaint's allegations and draws legal conclusions that do not follow.

To begin, while it is true that Officer Hunt was cross-deputized as a Special Deputy U.S. Marshal, he was also a DeKalb County Sheriff's Deputy. (¶¶ 13, 99.) The complaint expressly alleges that whether he acted with state

authority, federal authority, or both when depriving Ms. George of her constitutional rights is not yet known. (*See* ¶¶ 98–110.) Accordingly, the complaint pleads in the alternative, which the Federal Rules of Civil Procedure expressly permit. *See* Fed. R. Civ. P. 8(d)(2)–(3).

Under Rule 8, when a plaintiff makes alternative statements, "the pleading is sufficient if any one of them is sufficient." *Id.* at Rule 8(d)(2). That is true here. The complaint, for example, alleges that Officer Hunt was "either an employee of the United States government or an employee of a state or local government entity" (¶ 13), and that he led the raid "either strictly as a Deputy Sheriff or as a Deputy Sheriff working as part of or in conjunction with the Task Force" (¶ 104). A fulsome reading of the complaint, in fact, shows that it alleges four possible permutations. Officer Hunt (like the other officers) was:

  a. strictly [an] agent[] of the U.S. Marshals Service, operating under color of federal law, only;

  b. [a] cross-deputized agent[] of both the U.S. Marshals Service and an agency of state or local government, acting under color of both state and federal law;

  c. [an] agent[] of a state or local government working in conjunction with federal agents to raid Ms. George's home, acting under color of state law, at least, if not also federal law; or

  d. [an] agent[] of a state or local government acting under color of state law, only.

(¶ 110.) These alternative allegations are sufficient for Counts 1 and 2 so long as any one of them states a viable Section 1983 claim—and here they do.

For this reason, allegations that Officer Hunt may have exercised federal authority do not defeat Ms. George's claims that he acted under color of state law. To the contrary, the complaint supports the reasonable inference that he acted under color of state law exclusively or with supplemental federal authority. It clearly alleges that he is a state officer: a DeKalb County Sheriff's Deputy—something he does not contest, even while contesting other allegations. (¶ 13, 99.) It also alleges that "[m]ost or all" of the officers "wore clothing or vests that said SHERIFF," suggesting that the operation was conducted by a sheriff's office. (¶ 39.) The complaint adds that U.S. Marshals had already apprehended the suspect before the raid. (¶ 22.) If Officer Hunt had been acting in his capacity as a Special Deputy U.S. Marshal, it is reasonable to infer that he would have known the federal objective had already been achieved—making the raid unnecessary. These facts support a reasonable conclusion that he was not acting in his federal capacity at all.

Officer Hunt's argument fails as a matter of law for another reason: his cross-deputization does not prevent him from acting under color of state law.

A plaintiff satisfies Section 1983's "color of state law" requirement by alleging that the deprivation is "fairly attributable" to the state. *Charles v. Johnson*, 18 F.4th 686, 694 (CA11 2021) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). This inquiry asks whether (1) the deprivation was caused by the exercise of a state-created right or authority, and (2) the

defendant can fairly be described as a state actor. *Lugar*, 457 U.S. at 937.

The analysis does not turn on the presence of federal authority. Indeed, the text of Section 1983 includes no exceptions to liability for officers given dual state–federal authority. It applies not only to a person who acts under color of state law exclusively or primarily but also to "[e]very person" who under color of "any" state law deprives someone of federal rights. 42 U.S.C. § 1983.

Given the statutory text, it is unsurprising that courts have repeatedly recognized that the acts of federal officers—and even private individuals—may be fairly attributable to the state, satisfying the "color of state law" require-ment. Officials who are part of a federal institutional structure may act "at least in part" as state officers for Section 1983 purposes. *NeSmith v. Fulton*, 615 F.2d 196, 199–200 (CA5 1980). And when a rights deprivation is "the joint product of the exercise of a State power and of a non-State power," the relevant question is whether the state or its officials played a "significant" role. *Kletschka v. Driver*, 411 F.2d 436, 448–49 (CA2 1969).[3]

---

[3] *E.g.*, *Martinez v. Winner*, 771 F.2d 424, 441 (CA10 1985) (observing that fed-eral officials "may be liable under § 1983 where, as here, they are charged with conspiring with state officers or employees"); *Hindes v. FDIC*, 137 F.3d 148, 158 (CA3 1998) (observing as "a well-established principle" that "federal offi-cials are subject to section 1983 liability . . . where they have acted under color of state law, for example in conspiracy with state officials"); *Strickland v. Shalala*, 123 F.3d 863, 866 (CA6 1997) ("[W]e have joined a majority of circuits in recognizing that a federal official can act 'under color of state law' in certain circumstances . . . [and] the evaluation of whether particular conduct

The Supreme Court has likewise rejected categorical arguments like Officer Hunt's. In *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, the Court held that federal involvement does not foreclose the possibility that officials acted under color of state law. 440 U.S. 391, 399–400 (1979). The Court emphasized that there is no need to resort to a *Bivens* remedy where Section 1983 provides one—as it did in that case. *Id.* at 400.

Consistent with these principles, courts evaluating cross-deputized or task-force officers look to all the circumstances—not formal labels—to determine whether the officers acted under color of state law, federal law, or both.

For example, in *Couden v. Duffy*, the Third Circuit held that local officers assigned to a task force acted under color of state law where the investigation was locally initiated and pursued. 446 F.3d 483, 499 (CA3 2006). Also looking at all the circumstances, the Seventh Circuit in *Askew v. Bloemker* found that officers acted exclusively under federal law where they were federally funded, under federal supervision, and lacked any state-law authority for their

---

constitutes action taken under the color of state law must focus on the actual nature and character of that action." (cleaned up)); *Knights of the Ku Klux Klan v. E. Baton Rouge Par. Sch. Bd.*, 735 F.2d 895, 899–900 (CA5 1984) (finding local school board and federal government employees participated in a violation of Section 1983); *Hampton v. Hanrahan*, 600 F.2d 600, 623, 627 (CA7 1979) (permitting a Section 1983 action against federal officers because state officials played a meaningful role in a joint raid), *rev'd in part on other grounds*, 446 U.S. 754 (1980).

actions—because St. Louis, Missouri officers raided a home in Illinois, outside their state jurisdiction. 548 F.2d 673, 677 (CA7 1976).[4] Other courts likewise recognize that officers exercising both state and non-state authority remain subject to Section 1983 when state power plays a meaningful role. *See, e.g.*, *Bressi v. Ford*, 575 F.3d 891, 897–98 (CA9 2009).

Courts in the Eleventh Circuit, too, recognize that state–federal task force officers may have acted under color of federal or state law for the conduct at issue; it depends on the specific circumstances of the rights deprivation. For this reason, at the motion-to-dismiss stage, the absence of a developed record often "leaves unanswered essential questions regarding under what authority, and whose direction, the Defendants were acting." *McLeod v. United States*, No. 1:20-cv-595-JB-MU, 2021 WL 5906373, at *4 (S.D. Ala. Dec. 14, 2011). Discovery can answer those questions. Indeed, even in *Robinson v. Sauls*—a case Officer Hunt relies on to attack Ms. George's *Bivens* claims—the Eleventh Circuit acknowledged that plaintiffs may present evidence "that the local law officers were acting under color of state law when they participated in the task force." 102 F.4th 1337, 1341 & n.5 (CA11 2024); *see also, e.g.*, *Montgomery v.*

---

[4] *Cf. Thai v. County of Los Angeles*, 127 F.4th 1254, 1261–62 (CA9 2025) (examining the totality of the circumstances and concluding that officers acted under federal authority, alone, because (1) the task force was "implemented under federal law," (2) the officers were directly supervised by a federal agent, (3) the federal government reimbursed their salaries, and (4) the relevant conduct occurred outside the officers' local jurisdiction).

*Looney*, No. 23-00131-TFM-B, 2025 WL 2626125, at \*10 (S.D. Ala. Jan. 16, 2025) ("[T]he Court cannot conclude at this juncture that Defendants . . . were acting under color of federal (and not state) law at the time of the alleged constitutional violations, nor can the Court determine that [the plaintiff's claims against officers] for violating his rights under the Fourth and Eighth Amendments must be construed solely as *Bivens* claims.").

In short, cross-deputization does not categorically bar Section 1983 liability. At most, it raises a fact-bound question about the capacity in which the officer acted—one that cannot be resolved on a motion to dismiss with the facts alleged here. After all, adding to the facts about state action mentioned above, the complaint alleges that Officer Hunt's cross-deputization was predicated on his "authority, training, and law-enforcement position under state law" (¶ 106) and on "the approval of [his] supervisor in [his] state or local law-enforcement agency" (¶ 107). His cross-deputization "only added to [his] authority under state law; it did not detract from [his] state authority." (¶ 108.) He "remained employed as a law-enforcement officer by a state or local government entity and continued to exercise [his] state authority and use [his] state law-enforcement position[] in [his] cross-deputized role." (¶ 109.) And he worked jointly with state officers wearing "SHERIFF" gear. (¶ 39.)

It is true that a few circuits suggest a categorical rule precluding Section 1983 liability for task-force officers. *See Mohamud v. Weyker*, 144 F.4th 1099,

1103 (CA8 2025); *Jakuttis v. Town of Dracut*, 95 F.4th 22, 29–30 (CA1 2024); *King v. United States*, 917 F.3d 409, 433–34 (CA6 2019).[5] But the Eleventh Circuit is not among them, perhaps because that rule conflicts with the plain text of Section 1983 and Supreme Court precedent.

For good reason, then, Officer Hunt has not meaningfully defended those circuits' decisions or justified the categorical rule he advances. (*See* Doc. 13 at 6.) He simply points to *Abella v. Rubino*, 63 F.3d 1063, 1065 (CA11 1995) (per curiam), for the basic principle that Section 1983 claims challenge state actors' conduct and *Bivens* claims challenge federal officers' conduct. True enough.[6] But that doesn't answer the relevant question: Was Officer Hunt acting under color of state law when he deprived Ms. George of her constitutional rights? The complaint's allegations support the reasonable inference that he was.

Officer Hunt is left with his attorneys' unsworn, conclusory assertions that he was acting strictly as a federal officer at all relevant times.[7] That is not evidence. And in urging this Court to accept his allegations, Officer Hunt

---

[5] *See also Guerrero v. Scarazzini*, 274 F. App'x 11, 12 n.1 (CA2 2008) (summary order).

[6] At the same time, though, Officer Hunt maintains that neither avenue applies to his constitutional violations.

[7] Officer Hunt is simply wrong to say that "[t]he undisputed facts alleged by Plaintiff are that SpDUSM Hunt was operating at all times relevant to the Complaint as a USMS task force member under color of federal law." (Doc. 13 at 6.) Ms. George alleged four variations on Officer Hunt's capacity as a state and/or federal officer. (*See, e.g.*, ¶ 110.)

invites the Court to find facts contrary to the complaint, which courts may not do at this stage. *Cf. Montgomery*, 2025 WL 2626125, at *10 ("[T]he Moving Defendants offer nothing beyond their own broad assertions to establish that they were all acting under color of federal (and not state) law. At the motion to dismiss stage the Court cannot simply accept these assertions at face value."). As the Eleventh Circuit has instructed, "on a Rule 12(b)(6) motion to dismiss, [courts] must construct [their] own firewall between the facts pleaded in the complaint and any evidence, construing the complaint in the favor of the plaintiffs." *St. George v. Pinellas County*, 285 F.3d 1334, 1338 (CA11 2002).

Ms. George pleaded plenty of state action for her Section 1983 claims.

## II. The Court should not dismiss Counts 3 and 4 because both are viable under *Bivens*.

Counts 3 and 4 allege that if Officer Hunt acted under federal authority, he is liable directly under the Fourth and Fifth Amendments through *Bivens* for violating Ms. George's constitutional rights.

### a. The Westfall Act confirms that these claims remain viable.

When Congress enacted the Westfall Act, it preserved *Bivens* actions as they existed in 1988 while channeling other, common-law claims into the FTCA. *See* 28 U.S.C. § 2679(b)(2)(A); *Hernandez v. Mesa*, 589 U.S. 93, 111 n.9 (2020) (explaining that in enacting the Act, Congress "left *Bivens* where it found it"). At that time in 1988, *Bivens* actions were routinely available to

15

remedy Fourth and Fifth Amendment violations. *See, e.g.*, *Bivens*, 403 U.S. 388 (Fourth); *Rodriguez v. Ritchey*, 539 F.2d 394, 399–400 (CA5 1976) (Fourth); *Davis v. Passman*, 442 U.S. 228, 243–44 (1979) (Fifth); *Loe v. Armistead*, 582 F.2d 1291, 1293–95 (CA4 1978) (Fifth). Because Ms. George's claims fit squarely within those traditional categories, Counts 3 and 4 are precisely the type of claims Congress chose to preserve.

**b. Even under the modern *Bivens* framework, Ms. George's claims should proceed because they do not present a new *Bivens* context.**

Under the modern framework, a claim may proceed as long as it does not arise in a "new context"—that is, if it does not meaningfully differ from the claims in *Bivens* and its progeny. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). Trivial differences do not make a new context. Ms. George's case presents a new context only if it meaningfully departs from the "common and recurrent sphere of law enforcement" in which the availability of a *Bivens* remedy remains "settled law." *Ziglar v. Abbasi*, 582 U.S. 120, 134, 149 (2017).

Her case does not. The facts are as close to those in *Bivens* as plaintiffs can realistically present. In *Bivens*, line-level federal officers, performing routine domestic policing, entered Webster Bivens's apartment without a warrant to search or arrest him, and detained him there for an extended period, all without probable cause. *See* 403 U.S. at 389. In Ms. George's case, line-level officers, performing routine domestic policing, entered Ms. George's apartment

without a warrant to search or arrest her, and detained her there for an extended period, all without probable cause. (*See* ¶¶ 31–78.) This search-and-seizure conduct is the "common and recurrent sphere of law enforcement" where *Bivens* claims remain available. *Ziglar*, 582 U.S. at 134.

To be sure, the law-enforcement officers here were not part of the Federal Bureau of Narcotics, as were the officers in *Bivens*. But that is a trivial difference. After all, if the officers' work for a different law-enforcement agency alone creates a "new context," then all *Bivens* claims today present a new context—because the Federal Bureau of Narcotics was abolished in 1968. *See* Reorganization Plan No. 1 of 1968, 33 Fed. Reg. 5611 § 4, *reprinted in* 82 Stat. 1367 (1968). That can't be right, because the Supreme Court has instructed that the availability of a *Bivens* remedy in the "common and recurrent sphere" of domestic policing is "settled law." *Ziglar*, 582 U.S. at 134 ("[T]his opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose.").

Nor does the possible involvement of a warrant change the analysis. Ms. George alleges that any warrant was invalid, expired, or unsupported by probable cause because the suspect was already in custody. The possible existence of such a warrant that did not justify the search and seizure is not meaningfully different from the absence of a warrant altogether (as in *Bivens*); in both situations, the officers acted without lawful authority.

Officer Hunt's reliance on *Robinson v. Sauls*, 102 F.4th 1337 (CA11 2024), is misplaced. A judicial opinion "is to be read and applied in the light of the facts of the case in which the opinion was written." *Roberson v. United States*, 249 F.2d 737, 743 (CA5 1957). And *Robinson* arose from facts and claims very different from Ms. George's case and from *Bivens*. It involved a shootout and shooting death of a fugitive, Mr. Robinson, wanted on outstanding warrants, whom officers tried to arrest; and a claim that officers "used excessive force when they continued to shoot Mr. Robinson after he was unconscious and unresponsive." 104 F.4th at 1339, 1344. The court's ruling that the "excessive-force claim ar[ose] in a new context" thus makes sense, since "the Supreme Court has never recognized a cause of action for excessive force against officers operating as part of a USMS joint federal and state task force apprehending fugitives." *Id.* at 1344.

Officer Hunt ignores these key differences. Ms. George has not brought an excessive-force claim—much less one arising from a shooting death. The officers who entered her home were not trying to apprehend Ms. George as a sought-after fugitive. Nor were the officers pursuing a fugitive at all; they were on a futile hunt for a person already in custody with no link to Ms. George.

*Robinson*'s context was much farther removed from *Bivens* than the context here. Ms. George's matter also has no "national security implications" from activity at an international border, *e.g.*, *Hernandez*, 589 U.S. at 96; *Egbert*, 596

U.S. at 494, or a "formal policy" adopted by high-ranking officials, *Ziglar*, 582 U.S. at 137. Her case rather "involves 'not an extension of *Bivens* so much as a re-play' of the same principles of constitutional criminal law prohibiting the unjustified, warrantless seizure of a person." *Hicks v. Ferreyra*, 64 F.4th 156, 167 (CA4 2023).

Simply put, if Ms. George can't state a *Bivens* claim, then no one can. And that cannot be right, because *Egbert* explicitly instructed that *Bivens* remains in force to some extent. 596 U.S. at 502; *see also Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 5 (2025) (Kavanaugh, J., concurring) (opining that "[t]o the extent that . . . the Fourth Amendment prohibits such action" by federal officers, "remedies should be available in federal court").

Neither of Ms. George's *Bivens* claims present a new context because they both arise from the same conduct: officers entered her home without a warrant, seized her, and searched her property without lawful justification. Although Count 3 is framed as an unreasonable-search-and-seizure theory and Count 4 presents a due-process theory, both counts arise from "the search-and-seizure context in which [*Bivens*] arose." *Ziglar*, 582 U.S. at 134.

To be sure, a new "constitutional right at issue" might make a case "differ in a meaningful way" from *Bivens*. *Id.* at 139–40. But Counts 3 and 4 are merely two constitutional characterizations of a single course of events, which falls within the core *Bivens* context. In this way, Ms. George's case differs from

*Egbert*, for example, where a First Amendment retaliation claim stood on conduct without any parallel in *Bivens*. *See* 596 U.S. at 489 (addressing retaliation claim based on officer's alleged reporting of a license plate to a state department and prompting of a tax audit).

Because Ms. George's claims do not meaningfully differ from those recognized in *Bivens*, they do not arise in a new context. The Court's analysis should thus end there, and Officer Hunt's motion to dismiss Counts 3 and 4 should be denied. (Without a meaningful difference from *Bivens*, Ms. George's case also presents no special factors counseling hesitation in recognizing a remedy. Any reasons Officer Hunt suggests for denying a remedy here would apply also to the "common and recurrent sphere of law enforcement" at issue in *Bivens*, itself. *Ziglar*, 582 U.S. at 134.)

## III. The Court should not dismiss Counts 5–13 because the claims fall outside the FTCA and, thus, no party has moved to dismiss them.

The United States asks this Court to dismiss Counts 5–13, insisting that those are premature FTCA claims. (Doc. 13 at 13–15.) That is wrong on the merits, and the United States is not a party that can seek dismissal on Officer Hunt's behalf. (Nor has the United States purported to stand in for Officer Hunt for Counts 5 and 6, as it desires to do for Counts 7–13.)

As the complaint states, Counts 5–13, just like Counts 1–4, seek a

remedy for officers' unconstitutional conduct.[8] Just like the *Bivens* counts, Counts 5–13 fall under the plain terms of the Westfall Act's carveout from the FTCA, because each claim "is brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A).

The United States can substitute into a case only for claims within the FTCA's scope. Rightly, the United States has not characterized Counts 1–4 as FTCA claims. Counts 1 and 2 (the claims under Section 1983) are not FTCA claims because they do not target conduct by an "employee of the [federal] Government" for which "a private person[] would be liable" under state law. 28 U.S.C. § 1346(b)(1). Likewise, Counts 3 and 4 (the *Bivens* claims) are not FTCA claims because they are "brought for a violation of the Constitution of the United States." *Id.* § 2679(b)(2)(A).

Counts 5 and 6 are not FTCA claims for the same reason. They fall under the Westfall Act's carveout from the FTCA for claims brought for constitutional violations. *See id.* Indeed, the United States acknowledges that Counts 5 and 6 allege Fourth and Fifth Amendment violations, respectively. (Doc. 13 at 13.) The United States has also specified that its purported substitution does not apply to these Counts. (Doc. 16 at 1 & n.1 (clarifying "that the substitution . . . is limited to Counts 7 through 13").)

---

[8] For this reason, the Court has federal-question jurisdiction over Ms. George's claims. *See* 28 U.S.C. § 1331.

21

Counts 7–13 are not FTCA claims for the same reason as Counts 3–6. They, too, fall under the Westfall Act's carveout from the FTCA, because each Count stands on and seeks to remedy "a violation of the Constitution of the United States." (¶¶ 189, 195, 200, 206, 212, 218, 225 (quoting 28 U.S.C. § 2679(b)(2)(A)); *see also* ¶¶ 191, 193, 197, 199, 202, 204, 208, 210, 214, 216, 222–23, 230–31.)

As Justice Thomas has explained, historically, "[f]rom the ratification of the Bill of Rights until 1971," suits to recover damages against federal officers for violations of "a citizen's constitutional rights . . . were generally brought under state tort law." *Hernandez*, 589 U.S. at 115–16 (Thomas, J., concurring) (cleaned up). *Bivens* did not extinguish this tradition, which remained part of the "backdrop of established principles" and "existing law" against which Congress enacted the Westfall Act. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 758–59 (CA11 2020) (citation omitted). Thus, when Congress carved out from the FTCA actions "brought for a violation of the Constitution," that carveout included the traditional mode for redressing constitutional violations by federal officers. *Buchanon v. Barr*, 71 F.4th 1003, 1012–18 (CADC 2023) (Walker, J., concurring).

Nothing in the text, history, or purpose of the Westfall Act suggests that Congress funneled these traditional constitutional remedies into the FTCA. The text of 28 U.S.C. § 2679(b)(2)(A) is broad, exempting from the FTCA "a

civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States." It does not limit the exemption to claims "under *Bivens*," "arising directly under the Constitution," or "under an implied cause of action."

The historical context of the Westfall Act confirms this reading. Congress enacted the Act in response to *Westfall v. Erwin*, 484 U.S. 292 (1988), which addressed federal employees' immunity from ordinary state-law tort claims. That case did not involve constitutional claims. In reacting to *Westfall*, Congress channeled non-constitutional tort claims through the FTCA while expressly excluding constitutional claims. This background shows that Congress targeted ordinary tort claims—not remedies for constitutional violations—and preserved those remedies by expressly exempting them from the FTCA. *See* 28 U.S.C. § 2679(b)(2)(A).

The statute's purpose reinforces the same point. The Supreme Court in *Westfall* had required federal employees seeking immunity to show both that they acted within the scope of their employment and that they performed a discretionary function. *De Martinez v. Lamagno*, 515 U.S. 417, 425–26 (1995). Congress "reacted quickly" to eliminate "the 'discretionary function' requirement," thereby broadening employee immunity for ordinary common-law torts. *Id.* at 426. But in doing so, Congress also made clear that this expansion of immunity was not meant to shield officers from constitutional remedies, which

Congress expressly carved out of the FTCA. *See* 28 U.S.C. § 2679(b)(2)(A).[9]

In short, the Westfall Act's text, history, and purpose do not support treating Counts 7–13 as FTCA claims. That is enough to retain those Counts.

There is another, related reason: no party has moved to dismiss those claims. Officer Hunt has not moved to dismiss them. And he is the only defendant party; no one else has properly appeared.

The United States purported to substitute in under the FTCA for Counts 7–13 (not for Counts 1–6). (Docs. 12, 16.) But substitution is allowed only for FTCA claims. 28 U.S.C. § 2679(d)(1). The United States cannot substitute in for claims within the Westfall Act carveout, 28 U.S.C. § 2679(b)(2)(A), because those claims (which are "federal constitutional torts") are "not within the scope of the FTCA." *McCollum v. Bolger*, 794 F.2d 602, 608 (CA11 1986); *accord Linder v. United States*, 937 F.3d 1087, 1090 (CA7 2019) (explaining that substitution is "prohibited" "when the plaintiff's claim rests on the Constitution") *Daniel v. United States*, 891 F. Supp. 600, 604 (N.D. Ga. 1995) (explaining that a "claim based upon a constitutional deprivation is not a proper claim under the FTCA"). The United States does not argue that it could substitute in for

_____

[9] Precedent supplies even more support. As Judge Walker observed, concurring in *Buchanon*, at least one Supreme Court case supports the view that state-tort claims remain available against federal officers who act unconstitutionally. 71 F.4th at 1012–18 (Walker, J., concurring). In *Wilkie v. Robbins*, the Court observed that "a civil remedy in damages for trespass" was available against federal officers. 551 U.S. 537, 551 (2007).

claims carved out of the FTCA by the Westfall Act. Nor has it tried to substitute in for Counts 5 and 6—just as it (rightly) did not try to substitute in for Counts 1–4, which also fall outside the FTCA.

Because the United States could not substitute in, the United States may not speak for Officer Hunt in requesting dismissal of Counts 5–13.

Nor should this Court dismiss those claims *sua sponte.* "[S]ua sponte dismissals are unusual" and result from unusual circumstances. *Creech v. Tewalt,* 84 F.4th 777, 787 (CA9 2023); *accord, e.g., Gonzalez-Gonzalez v. United States,* 257 F.3d 31, 33 (CA1 2001) ("Sua sponte dismissals are strong medicine, and should be dispensed sparingly."). This case is an especially poor candidate since Ms. George seeks to bring newly ripe claims under the FTCA against the United States in a First Amended Complaint (*see* Doc. 20-2).

## CONCLUSION

For the foregoing reasons, this Court should deny as moot the motion to dismiss after granting Ms. George's motion for leave to file her First Amendment Complaint, or deny the motion to dismiss for the reasons above.

Respectfully submitted this 17th day of April 2026.

/s/ Andrew Canter
Andrew Canter
Georgia Bar No. 365212

Zack Greenamyre
Georgia Bar No. 293002

MITCHELL, SHAPIRO,
GREENAMYRE & FUNT LLP
881 Piedmont Ave.
Atlanta, GA 30309
404-812-4747 (phone)
404-812-4740 (fax)
zack@mitchellshapiro.com
andrew@mitchellshapiro.com

/s/ John C. Korevec
John C. Korevec*
California Bar No. 310157
INSTITUTE FOR JUSTICE
901 N. Glebe Rd. Ste. 900
Arlington, VA 22203
(703) 682-9320
jkorevec@ij.org

Marie L. Miller*
Indiana Bar No. 34591-53
Arizona Bar No. 040537
INSTITUTE FOR JUSTICE
3200 N. Central Ave. Ste. 2160
Phoenix, AZ 85012
(480) 557-8300
mmiller@ij.org

*Admitted *pro hac vice*

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

In accordance with Local Rule 5.1(C), this document was prepared in Century Schoolbook font (13-point type).

/s/ John C. Korevec
John C. Korevec*
California Bar No. 310157
INSTITUTE FOR JUSTICE
901 N. Glebe Rd. Ste. 900
Arlington, VA 22203
(703) 682-9320
jkorevec@ij.org

*Admitted* pro hac vice

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2026, I electronically filed the foregoing Plaintiff's Opposition to Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

/s/ John C. Korevec
John C. Korevec*
California Bar No. 310157
INSTITUTE FOR JUSTICE
901 N. Glebe Rd. Ste. 900
Arlington, VA 22203
(703) 682-9320
jkorevec@ij.org

*Admitted* pro hac vice

*Counsel for Plaintiff*
