IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CATHY GEORGE,<br><br>Plaintiff,<br><br>*v.*<br><br>JA'RAD L. HUNT, WALTER DENNARD, FOURTEEN UNKNOWN LAW ENFORCEMENT OFFICERS, AND JOHN DOES, ALL SUED IN THEIR INDIVIDUAL CAPACITIES; UNITED STATES OF AMERICA,<br><br>Defendants. | Civil Action No.<br>1:25-cv-06059-JPB |

**DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS COUNTS 7-17 OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT**

Under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant United States of America moves to dismiss Counts 7-17 of Plaintiff's First Amended Complaint (the "Complaint"), Doc. 28.

## INTRODUCTION

This case arises from a law-enforcement search of Plaintiff Cathy George's apartment conducted to apprehend a fugitive wanted for murder by the United States Marshals Service's ("USMS") Southeast Regional Fugitive Task Force (the "Fugitive Task Force"). Prior to the search, members of the Fugitive Task Force gathered information indicating that the fugitive was located in Plaintiff's

apartment. They sought and obtained a search warrant, which they then executed. After speaking with Plaintiff, the officers recognized that the information used to identify Plaintiff's apartment as the fugitive's location was incorrect. They promptly informed Plaintiff that there had been a mistake. Defendant Ja'Rad Hunt provided his contact information, and the officers departed without incident.

Plaintiff seeks to transform this mistake into a sprawling 69-page, 17-count Complaint against two named officers, 14 unidentified officers, and the United States. Her original complaint was focused on a single allegation—that the Fugitive Task Force executed a search for a man, Joshua Smiley, whom they knew was already in federal custody. After counsel for Defendants provided Plaintiff's counsel with a copy of the search warrant, which clearly identified Joshua Stokes—not Smiley—as the fugitive at issue, Plaintiff amended her complaint to include several new allegations.

Her claims against the United States are brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.[1] They range from assault, battery, and conversion, to an "in the alternative" constitutional challenge to the Westfall Act. For numerous reasons, each of these claims fails.

[1] The claims against Defendants Hunt and Dennard are addressed in a separate motion.

*First*, Plaintiff filed this lawsuit only twelve days after submitting her Standard Form 95 ("SF-95") administrative tort claim to the U.S. Marshals Service. She therefore filed suit before the mandatory six-month administrative exhaustion period expired, and this Court lacks subject-matter jurisdiction over Plaintiff's FTCA claims under 28 U.S.C. § 2675(a). *Second*, Plaintiff failed to administratively exhaust any FTCA claim based on the alleged loss of $15,000 or damage to her lockbox. Her SF-95 expressly stated she "make[s] no claim for property damages" and did not mention missing currency or a damaged lockbox.

*Third,* the discretionary function exception, 28 U.S.C. § 2680(a), bars Plaintiff's FTCA claims because she seeks to challenge the officers' investigative and operational decisions—including how they corroborated the fugitive's identity and location and how they executed the search. *Fourth*, Count 17—which asks the Court to declare the Westfall Act unconstitutional "as applied"—fails because there is no waiver of sovereign immunity for constitutional tort claims against the United States. *Finally*, the Complaint fails to state any plausible claim against the United States under Rule 12(b)(6). Plaintiff does not identify which of the 16 officers allegedly committed which act; and she fails to plead sufficient facts plausibly supporting essential elements of her state-law tort

claims. For these reasons, Counts 7–17 should be dismissed as to the United States.

## FACTUAL BACKGROUND[2]

### A. The search warrant and supporting affidavit

On October 23, 2023, a Fulton County Magistrate Court Judge issued a search warrant authorizing officers to search Plaintiff's apartment for: (1) murder suspect Joshua Stokes, identified by his full name, date of birth, height, and weight, for apprehension purposes; (2) a cell phone believed to belong to Stokes; and (3) a 9mm handgun. Doc. 28 ¶¶ 36, 41; Stokes Search Warrant, Doc. 49-3.[3] The warrant identified Plaintiff's apartment by address and physical description and stated that the suspected offense at issue was murder under Georgia law. Doc. 28 ¶¶ 40, 46; Doc. 49-3. Defendant Walter Dennard submitted the supporting affidavit that accompanied the warrant. Doc. 28 ¶ 15; *see also* Stokes Search Warrant Affidavit, filed under provisional seal, Doc. 47.

---

[2] The United States assumes the facts alleged in the Complaint to be true for purposes of this motion. *See Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

[3] In resolving a Rule 12(b)(6) motion, the Court may consider documents central to the complaint whose authenticity is not challenged. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The same is true under Rule 12(b)(1). *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

While Plaintiff acknowledges that Stokes was wanted for murder at the time of the search, she alleges he had no connection to her or her home. Doc. 28 ¶¶ 2, 49.[4] She also alleges that despite the search warrant, some officers nonetheless were searching for another person, Joshua Smiley, who had been arrested four months earlier. *Id.* ¶¶ 2-3, 27-35, 67.

**B. Execution of the search**

Before sunrise on October 24, 2023, at least fifteen officers—including Defendant Hunt and other unidentified officers—entered the building where Plaintiff resided with a key fob obtained from building staff and approached Plaintiff's apartment. *Id.* ¶¶ 68-70, 75-85. The officers "pounded" on her door, announced themselves, and instructed her to open it and come out with her hands up. *Id.* ¶¶ 91, 94. When Plaintiff did, she encountered officers pointing firearms at her. *Id.* ¶ 96. Defendant Hunt and his partner wore plain clothes; the others wore vests marked "SHERIFF." *Id.* ¶¶ 78-80. Plaintiff alleges the officers "pulled her by her arm, and dragged her down the hall to the elevator area, outside her unit." *Id.* ¶ 104. According to Plaintiff, she remained in the hallway

[4] Plaintiff admits that a Joshua Stokes was wanted for murder at the time of the search (Doc. 28 ¶ 2), but she also speculates that officers may have been looking for a different Joshua Stokes who was already incarcerated in connection with a July 2020 fatal stabbing, *id.* ¶ 64. That speculative theory is not entitled to a presumption of truth, and it is entirely baseless. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

for 10 to 20 minutes while "other officers" searched the apartment. *Id.* ¶¶ 105, 122.

Plaintiff further alleges that some of the officers told her they were looking for Smiley. *Id.* ¶ 109. They asked to see photographs of her sons and she retrieved her phone. *Id.* ¶¶ 123-27. Plaintiff alleges that after comparing those photographs to a photograph of Smiley, Defendant Hunt told Plaintiff there had been a mistake and gave her his card. *Id.* ¶¶ 128-40. The officers left roughly 20 minutes after arriving. *Id.* ¶ 143. Plaintiff alleges she never received a copy of the search warrant and no warrant return was filed. *Id.* ¶¶ 158, 160.

Plaintiff also alleges—for the first time in her Complaint, filed more than two years after the search—that approximately $15,000 in cash was taken from her underwear drawer by unidentified officers, and that a lock on a wall-mounted box in her closet was broken during the search. *Id.* ¶¶ 147-48, 150-52.

**C. Plaintiff's five alternative warrant scenarios**

Despite the existence of the Stokes search warrant, Doc. 49-3, Plaintiff offers five different hypothetical explanations for why the officers entered her home: (1) they executed the Stokes warrant while mistakenly searching for Smiley, Doc. 28 ¶¶ 174-78; (2) they never intended to execute the Stokes warrant and had a separate warrant for Smiley, *id.* ¶¶ 179-80; (3) they had both the Stokes search warrant and a Smiley arrest warrant and believed the former authorized a

search for the latter, *id.* ¶¶ 181-85; (4) they intended to execute the Stokes warrant, but it was invalid, *id.* ¶¶ 186-92; or (5) they had no warrant at all, *id.* ¶¶ 193-198. Plaintiff provides no factual basis supporting any of these alternative scenarios.

## PROCEDURAL HISTORY

Plaintiff submitted her SF-95 to the USMS on October 10, 2025. Doc. 28 ¶¶ 7, 162; Plaintiff's SF-95, Doc. 49-1. Her SF-95 claimed $5 million in personal injury damages and expressly stated, "I make no claim for property damages." *Id.* Box 12a & Supp. at 4. Twelve days later, on October 22, 2025, Plaintiff filed her original Complaint. Doc. 1. That pleading asserted Georgia tort claims against Defendant Hunt and other defendants and did not mention any missing currency. *Id.*

On March 13, 2026, the United States certified under the Westfall Act that Defendant Hunt acted within the scope of his federal duties during the events alleged in the Complaint. Doc. 12. The United States filed a Notice of Substitution, replacing Defendant Hunt with the United States as the defendant for the state-law tort claims. Doc. 12. On August 31, 2026, the United States filed a second certification and Notice of Substitution for Defendant Dennard. Doc. 46. Under the Westfall Act, the United States becomes the sole defendant for all state-law tort claims. *See* 28 U.S.C. §§ 2679(d)(1), (d)(4).

On June 18, 2026, Plaintiff filed the Complaint, which contains seventeen counts. Doc. 28. Counts 1 and 2 assert claims under 42 U.S.C. § 1983 based on alleged state action. *Id.* ¶¶ 312-17. Counts 3 and 4 assert *Bivens* claims. *Id.* ¶¶ 318-26. Counts 5 and 6 purport to assert claims under 28 U.S.C. § 2679(b)(2)(A). *Id.* ¶¶ 327-40. Counts 7 through 15 assert various Georgia tort claims, for which the United States has been substituted. *Id.* ¶¶ 341-419. Count 16 asserts those same torts against the United States under the FTCA, *id.* ¶¶ 420-25, and Count 17 is a due process challenge to the Westfall Act "as applied." *Id.* ¶¶ 426-31.

## LEGAL STANDARDS

### A. Rule 12(b)(1)

A jurisdictional challenge under Rule 12(b)(1) may be either facial or factual. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). On a facial attack, which the United States raises here, the court asks whether the plaintiff has sufficiently alleged a basis for jurisdiction and takes the allegations as true. *Id.*

### B. Rule 12(b)(6)

A complaint must contain enough factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facts merely consistent with liability stop short of the line between possibility and plausibility, *Twombly*, 550 U.S. at 557, and legal conclusions are not entitled

to the presumption of truth, *Iqbal*, 556 U.S. at 678. "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## ARGUMENT

### I. The Court lacks subject matter jurisdiction over Plaintiff's FTCA claims

The FTCA provides a limited waiver of sovereign immunity by the United States. *See Martin v. United States*, 605 U.S. 395, 400 (2025). It permits suits against the United States only for injuries "caused by the negligent or wrongful act or omission" of a federal employee "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see Shivers v. United States*, 1 F.4th 924, 928 (11th Cir. 2021).[5]

[5] Georgia substantive law applies here because it is the place where the alleged tort occurred. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994). Accordingly, the United States may only be liable in this case if, under "like circumstances," a "private person" would be liable under Georgia law. *See United States v. Olson*, 546 U.S. 43, 44 (2005).

**A. Plaintiff did not administratively exhaust her FTCA claims**

Before filing an FTCA action, a claimant must submit an administrative claim to the appropriate federal agency and wait until the agency denies the claim or six months pass without a decision. This requirement is jurisdictional. *See* 28 U.S.C. 2675(a); *Suarez v. United States*, 22 F.3d 1064, 1065-66 (11th Cir. 1994). The Supreme Court has held that a plaintiff must fully exhaust administrative remedies before filing suit. *See McNeil v. United States*, 508 U.S. 106, 111-13 (1993). If the lawsuit is filed before exhaustion is complete, the Court lacks subject matter jurisdiction, and the defect cannot be cured by later developments. *See also Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (district court lacked jurisdiction over parents' claim under the FTCA related to son's treatment at a military hospital, where the complaint was filed less than six months from date parents filed claim with agency).

The timeline here is undisputed. Plaintiff submitted her SF-95 to USMS on October 10, 2025. Doc. 28 ¶¶ 7, 162; Doc. 49-1. She filed this lawsuit 12 days later, on October 22, 2025 (Doc. 1)—long before the six-month period expired on April 10, 2026. Doc. 28 ¶¶ 7, 162. Her original Complaint asserted the same tort claims that now appear in Counts 7 through 13 of the Complaint and form the basis of Count 16. *Compare* Doc. 1 ¶¶ 182-232 *with* Doc. 28 ¶¶ 341-425. Accordingly, Counts 7 through 13 and Count 16 must be dismissed for lack of

subject matter jurisdiction. *See McNeil*, 508 U.S. at 111-13; *Turner ex rel. Turner*, 514 F.3d at 1200.

**B. Plaintiff did not exhaust her claims concerning the alleged missing currency or broken lockbox (Counts 14-15)**

Plaintiff also failed to exhaust her tort claims relating to the alleged missing $15,000 and the damaged lockbox. An FTCA administrative claim must provide enough detail to permit the agency to investigate the allegations. *See Orlando Helicopter Airways v. United States*, 75 F.3d 622, 625 (11th Cir. 1996).

Plaintiff's SF-95 failed to allege the missing $15,000 or the damaged lockbox. To the contrary, it expressly stated: "I make no claim for property damages." Doc. 49-1 at Box 12a & Supp. at 4. The supplement she attached described the search but did not mention any missing currency or a broken lockbox. *Id.*, Supp. at 1-4. Her original Complaint likewise did not mention either allegation. *See* Doc. 1. Plaintiff raised both issues for the first time in the Complaint filed in June 2026, more than two years after the search. Doc. 28 ¶¶ 150-52. Thus, Plaintiff failed to exhaust her claims based on these allegations (Counts 14 and 15).[6]

---

[6] Moreover, it would be too late for her to do so now. The FTCA provides that a tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues" and then brought to federal court within six months after the agency acts on the claim. 28 U.S.C. § 2401(b).

To be sure, a claimant need not preview every legal theory in her SF-95. *See Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999). But courts have made clear that an administrative claim must alert the agency to the essential facts of the alleged injury. *See Orlando Helicopter Airways*, 75 F.3d at 626 (claim alleging a whistleblower's conduct gave no notice of claims against government officials); *Bush v. United States*, 703 F.2d 491, 495 (11th Cir. 1983) (malpractice claim that did not challenge consent form gave no notice of an informed-consent claim). Because Plaintiff's SF-95 did not include any allegations about missing money or damaged property, those claims are unexhausted and must be dismissed for lack of subject matter jurisdiction.[7]

**C. The discretionary function exception bars Plaintiff's FTCA claims**

The FTCA's discretionary function exception preserves sovereign immunity for claims based on discretionary government conduct. 28 U.S.C. § 2680(a). The exception applies even when a plaintiff alleges constitutional violations or asserts that officials abused their discretion. *Id.*; *see also Shivers*, 1 F.4th at 930. This exception recognizes that imposing tort liability for policy-laden judgment calls "would seriously handicap efficient governmental

[7] Plaintiff's claim concerning the currency may also be barred by the FTCA's detention of goods exception. *See* 28 U.S.C. § 2680(c); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227-28 (2008) (applying detention of goods exception to bar prisoner's FTCA claim concerning alleged mishandling of his belongings).

operations." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). It prevents courts from second-guessing decisions grounded in social, economic, and political policy "through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991). Plaintiff bears the burden of alleging facts that plausibly show her claims fall outside the discretionary function exception. *See Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1159 (11th Cir. 2020).

The Supreme Court developed a two-part test that courts apply to determine whether challenged conduct falls within the discretionary function exception: (1) first, the court asks whether the conduct was discretionary—that is, whether it involved an element of judgment or choice, and (2) second, if the conduct was discretionary, the court asks whether it is the kind of judgment the exception shields—that is, whether it is susceptible to policy analysis when viewed objectively. *Foster Logging, Inc.*, 973 F.3d at 1157-59; *see also Gaubert*, 499 U.S. at 322-23. Conduct is not discretionary if a federal statute, regulation, or policy prescribes a specific course of action. *Id.* (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

**1. Decisions about investigating the location of a fugitive and carrying out the search are discretionary.**

Plaintiff challenges how officers corroborated the fugitive's identity, custodial status, and location, and how they planned and executed the search

warrant. Doc. 28 ¶¶ 171, 201-02, 207. Plaintiff identifies no federal statute, regulation, or binding policy that dictated how the officers must verify a fugitive's whereabouts or execute a search warrant. Absent such a mandatory directive, the officers' decisions fall squarely within the discretionary function exception. *See Foster Logging*, 973 F.3d at 1157-58.

**2. These judgments are of the type the discretionary function exception was designed to shield**

The second prong is also satisfied. *Mesa* and *Mid-South Holding* are controlling. In *Mesa v. United States*, 123 F.3d 1435 (11th Cir. 1997), DEA agents arrested the wrong John Mesa, and the plaintiffs alleged failures in investigating his identity and in recognizing the error. *Id.* at 1437. The Court held that deciding "how to locate and identify" an arrest warrant's subject, and determining whether the person apprehended is the person named, are discretionary decisions susceptible to policy analysis. *Id.* at 1438-39. Such decisions require weighing urgency, public-safety risk, operational secrecy, and the allocation of finite resources. *Id.*

*Mid-South Holding Co. v. United States*, 225 F.3d 1201 (11th Cir. 2000), extended *Mesa* to the manner in which a search is carried out. Customs and Coast Guard personnel boarded a vessel on a narcotics tip and found nothing. *Id.* at 1203. Both the decision to search and the "on-site decisions of the agents . . . concerning the manner in which to search the vessel" fell within the exception,

because agents must balance locating contraband against "efficiency and the minimization of intrusion on the privacy and property interests of searched parties." *Id.* at 1206-07.

Plaintiff's allegations mirror those cases—she challenges how officers verified the fugitive's identity, evaluated his custodial status, determined his connection to her apartment, and executed the search. Doc. 28 ¶¶ 199-217, 300-09, 372-73. These are all classic investigative-strategy and resource-allocation judgments.

### 3. This Court's decision in *Martin* addressed similar conduct

This Court addressed similar allegations in *Martin v. United States*, 631 F. Supp. 3d 1281, 1286-88 (N.D. Ga. 2022) (Boulee, J.), *aff'd*, No. 23-10062, 2024 WL 1716235 (11th Cir. Apr. 22, 2024), *vacated and remanded,* 605 U.S. 395 (2025), where FBI agents executed search and arrest warrants at the wrong home due to an incorrect GPS reading and detained the occupants before recognizing the error. This Court held that the discretionary function exception barred the plaintiffs' tort claims because the agents' investigative and preparatory decisions fell within it. *Martin*, 631 F. Supp. 3d at 1295-97. The Eleventh Circuit affirmed. *Martin*, 2024 WL 1716235.

The Supreme Court later vacated and remanded on other grounds, holding that the law-enforcement proviso overrides only the intentional tort

exception in section 2680(h), not the discretionary function exception in section 2680(a). *Martin*, 605 U.S. at 413-14. The Court declined to decide whether the discretionary exception applied to the particular facts of that case, remanding that issue to the Eleventh Circuit, where the case remains pending. *Id.* at 410-11.

Although the applicability of the discretionary function exception in *Martin* has not yet been decided, other courts have applied the exception on closely comparable facts. *See, e.g.*, *Martin as Next of Friend to H.C. & H.C. v. United States*, No. 1:24-cv-3341-SEG, 2025 WL 3187927, at *6-7 (N.D. Ga. Sept. 25, 2025) (exception applies to a USMS pursuit even accepting allegations that the Marshals knew the occupants were not their warrant subjects, because the inquiry is whether the function was discretionary, not how the discretion was exercised); *Vivas v. United States*, No. 1:20-cv-02217-WMR, 2021 WL 2582300, at *3 (N.D. Ga. Apr. 21, 2021) (decisions "in determining how and where to locate the subject of the warrant" served at the wrong home are covered by discretionary function); *Figueroa v. United States*, No. 13-1290, 2014 WL 6879316, at *8-9 (D.P.R. Dec. 4, 2014) (discretionary function exception applied where FBI agents searched the wrong address and handcuffed the wrong people).

Here, the execution of the warrant at Plaintiff's apartment is no different than the warrant executions in *Martin, Mesa*, *Vivas*, and *Figueroa*. The

discretionary function exception applies to Plaintiff's claims, and this Court lacks jurisdiction.

**4. Plaintiff's allegations of unconstitutional conduct do not defeat the discretionary function exception**

Plaintiff frames her allegations in Counts 7-15 as constitutional violations, even though they assert state law tort claims. But the Eleventh Circuit has held that the discretionary function exception applies to discretionary conduct even when the plaintiff alleges a constitutional violation. *Shivers*, 1 F.4th at 930. As the Court explained, the language Congress chose in § 2680(a) is unqualified; Congress could have carved out conduct rising to the level of a constitutional violation, but did not. *Id.* The statute reaches discretionary acts "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The relevant question is whether the conduct was discretionary, not whether it was lawful or constitutional. *Shivers*, 1 F.4th at 930-33. Because the conduct here was discretionary, the exception applies.

**D. The Court lacks subject matter jurisdiction over Count 17**

Count 17 asks this Court to declare the Westfall Act unconstitutional as applied if Plaintiff is left without a remedy. Doc. 28 ¶¶ 426-31. But no waiver of sovereign immunity permits such a claim. The FTCA's waiver extends only to claims where the United States would be liable "as a private person" under state law. 28 U.S.C. § 1346(b)(1). Constitutional tort claims do not fall within this

waiver. *See Meyer*, 510 U.S. at 477-78. Moreover, the fact that Plaintiff's *Bivens* and FTCA claims fail does not establish the absence of a remedy in any constitutionally meaningful sense; it simply means the claims fail under applicable law. *See Buchanan v. Barr*, 71 F.4th 1003, 1009-10 (D.C. Cir. 2023) ("To the extent damages under a federal cause of action are necessary for full enjoyment of that constitutional right, such endorsement must come from the Supreme Court or from Congress."). Plaintiff cannot invoke an "as-applied" constitutional challenge to the Westfall Act as a jurisdictional workaround.

## II. In the alternative, the Complaint fails to state a claim against the United States

Even if the Court had subject matter jurisdiction over some or all of the claims, Plaintiff fails to state a claim against the United States under Rule 12(b)(6). Plaintiff's allegations do not plausibly show that a federal officer committed any of the torts she asserts.

### A. Plaintiff does not allege which officers committed which actions

The Complaint attributes nearly every action—the pointing of firearms, entry, search, seizure of property, and alleged currency loss—to a group of as many as 16 officers. Doc. 28 ¶¶ 16, 96, 104-05, 150. This type of "group pleading" fails to state a claim.

Plaintiff alleges that "Officer Hunt, Officer Dennard, and Fourteen Unknown Law Enforcement Officers" all "grabbed" Plaintiff and "dragged her"

to the hallway. *Id.* ¶ 348. That allegation is implausible on its face: 16 people could not have simultaneously "grabbed" her, and the Complaint acknowledges that some officers were searching the apartment while she was in the hallway. *Id.* ¶¶ 105, 122. Plaintiff also alleges that Dennard "may have" been present, underscoring the speculative nature of the allegations. *Id.* ¶ 70.

The Eleventh Circuit describes this type of pleading—asserting multiple claims against multiple defendants without identifying which defendant committed which act—as a "shotgun pleading." *See, e.g.*, *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *Kabbaj v. Obama*, 568 F. App'x 875, 880 (11th Cir. 2014). Shotgun pleadings violate Rule 8 because they make it impossible to determine which defendant is alleged to have committed which tort. *See id.*

This is fatal to Plaintiff's FTCA claims. The FTCA's waiver of sovereign immunity applies only when a specific federal employee, acting within the scope of federal employment, allegedly committed the tort. *See* 28 U.S.C. § 1346(b)(1). Plaintiff must therefore allege, act by act, which officer committed the conduct and whether that person was a federal employee. *See id.* Aggregating sixteen officers of mixed alleged affiliation—"state," "federal," or "both"—into a collective actor is insufficient. Doc. 28 ¶¶ 16–17, 239.

**B. Plaintiff's conditional and speculative allegations are not entitled to presumption of truth.**

Rule 8 permits alternative factual allegations, but it does not permit speculative scenarios or hypothetical chains of events unsupported by facts. Plaintiff repeatedly alleges conditional propositions—not facts—such as "if the warrant failed to satisfy constitutional requirements," Doc. 28 ¶ 38, "if the warrant was to search for Stokes, who was in prison," *id.* ¶ 177, "if the warrant was issued after Smiley's apprehension," *id.* ¶¶ 200–05, or "if officers had no warrant at all," *id.* ¶¶ 193–98. These statements are not factual allegations; they are hypotheticals. Courts do not accept such speculative assertions as true when analyzing plausibility under Rule 12(b)(6). *See Pittman v. State Farm Fire & Casualty Co.*, 662 F. App'x 873, 881 (11th Cir. 2016) (scenario pleaded in the alternative to two other hypotheses was "complete speculation").

Plaintiff also alleges various mental states—such as Defendant Dennard "knowingly provided false information," Doc. 28 ¶ 54, "failed to conduct even the most basic checks," *id.* ¶ 61, and had "no first-hand knowledge," *id.* ¶ 62—but alleges no facts from which these conclusions could be inferred. Allegations about what Defendants "knew," "failed to check," or "intended," made on information and belief and without supporting facts, are not accepted as true. *See, e.g.*, *Bright v. Thomas*, 754 F. App'x 783, 787 (11th Cir. 2018) (bare allegation of knowledge, without supporting facts, is conclusory); *Mann v. Palmer*, 713 F.3d

1306, 1315 (11th Cir. 2013) (a court does not have to take as true allegations made on information and belief that lack factual support to be plausible).

The Complaint also contains an obvious alternative explanation for the officers' conduct: a judge issued a facially valid search warrant identifying the fugitive, evidence, and address, and officers executed it the next morning. Doc. 28 ¶¶ 36, 40–41, 46, 68; Doc. 49-3. The existence of this warrant makes Plaintiff's scenarios alleging nonexistent warrants or warrantless entry implausible. *See Twombly*, 550 U.S. at 567; *Iqbal*, 556 U.S. at 681–82.

### C. Plaintiff does not plausibly plead her Georgia tort claims

Plaintiff's tort claims also fail for other reasons, as summarized below:

#### 1. Assault (Counts 7, 16)

Under Georgia law, assault requires an act intended to injure and the apparent ability to do so. *See Edwards v. Sabat*, 263 Ga. App. 852, 853 (2003); *Watkins v. State*, 254 Ga. 267, 268 (1985). Plaintiff alleges that officers pointed firearms at her. Doc. 28 ¶¶ 96, 342. But officers executing a warrant for a murder suspect and a handgun may display weapons to secure the scene. *See Williams v. United States*, 314 F. App'x 253, 259 (11th Cir. 2009); *see also* O.C.G.A. § 16-3-21(a). Plaintiff alleges no facts suggesting that any officer's conduct exceeded what the search reasonably required. Counts 7 and 16 fail.

### 2. Battery (Counts 8, 16)

Battery requires intentional, offensive touching to a reasonable person. *See Ellison v. Burger King Corp.*, 294 Ga. App. 814, 816-17, 670 S.E.2d 469, 472 (2008). Plaintiff alleges that officers "pulled her by her arm" and "dragged her down the hall." Doc. 28 ¶ 104. But officers executing a search warrant may use reasonable force to secure the premises. *See Williams*, 314 F. App'x at 259; *see also* O.C.G.A. § 16-3-21(a). Plaintiff alleges no facts indicating the force was excessive, nor does she identify which officer touched her. Counts 8 and 16 fail.

### 3. Trespass (Counts 9, 16)

Trespass requires an unlawful interference with property. O.C.G.A. § 51-9-1. A search performed under a facially valid warrant is not trespass. *See Lavassani v. City of Canton*, 760 F. Supp. 2d 1346, 1371 (N.D. Ga. 2010); *see also Woodstone Townhouses, LLC v. So. Fiber Worx, LLC*, 358 Ga. App. 516, 522, 855 S.E.2d 719, 728 (2021) (the "innocent trespasser" doctrine protects from liability "individuals who enter the land of another under the mistaken belief that it is permissible to do so"). Plaintiff alleges only hypothetical defects in the warrant, Doc. 28 ¶¶ 38, 175-77, 187-89, none of which plausibly undermine its facial validity. Counts 9 and 16 fail.

**4. False imprisonment (Counts 10, 16)**

False imprisonment is the "unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. Detention during execution of a search warrant is lawful, *see Franklin v. Consol. Gov't of Columbus*, 236 Ga. App. 468, 470, 512 S.E.2d 352, 355 (1999), and a party who executed a warrant in "good faith" may not be held liable for false imprisonment even if the warrant is defective or void, O.C.G.A. § 51-7-21. The Supreme Court has also held that officers may detain occupants while executing a search. *See Muehler v. Mena*, 544 U.S. 93, 98-99 (2005). Plaintiff alleges she was detained for 10 to 20 minutes, Doc. 28 ¶ 122, the same duration as the search. That is not false imprisonment. Counts 10 and 16 fail.

**5. False arrest (Counts 11, 16)**

False arrest under O.C.G.A. § 51-7-1 requires an arrest under process of law, made without probable cause and maliciously. Plaintiff does not plausibly allege that she was arrested; the Complaint describes a brief detention in a hallway during the search, after which the officers left without taking her into custody. Doc. 28 ¶¶ 122, 142-43. And her bare assertion that officers "acted maliciously," Doc. 28 ¶ 366, is a legal conclusion that should be disregarded. Counts 11 and 16 fail.

**6. Negligence (Counts 12, 16)**

Plaintiff's negligence claim is barred by the discretionary-function exception, as discussed above. Independently, Georgia's impact rule bars her negligence claim. Georgia's impact rule permits a plaintiff to recover emotional-distress damages in a negligence action only where she shows a physical impact, that the impact caused physical injury, and that the physical injury caused the mental suffering. *See Owens v. Gateway Mgmt. Co.*, 227 Ga. App. 815, 816, 490 S.E.2d 501, 502 (1997). Plaintiff alleges emotional distress, Doc. 28 ¶¶ 247–51, but no physical injury arising from negligence. Counts 12 and 16 fail.

**7. Intentional infliction of emotional distress (Counts 13, 16)**

Intentional infliction of emotional distress requires conduct so extreme in degree as to go beyond all possible bounds of decency; whether the alleged conduct meets that threshold is a question of law for the Court. *See Miraliakbari v. Pennicooke*, 254 Ga. App. 156, 157, 561 S.E.2d 483, 486 (2002); *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 706, 409 S.E.2d 835, 837 (1991). The circumstances alleged here do not meet that standard. *See Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, 2022 WL 4375364, at *12 (11th Cir. Sept. 22, 2022). Counts 13 and 16 fail.

**8. Trespass to personalty and chattels (Counts 14, 16)**

These claims arise from the alleged lockbox damage and currency loss. These claims were not administratively exhausted, as explained above. As to the lockbox, the warrant authorized a search for a cell phone and handgun—items that could fit into a lockbox. Officers executing a search warrant may open containers capable of holding the objects of the search. *See United States v. Ross*, 456 U.S. 798, 820–21 (1982). Moreover, Plaintiff does not allege which officers broke the lockbox or took her money. Counts 14 and 16 should be dismissed.

**9. Trover/conversion (Counts 15, 16)**

This count was not administratively exhausted, as explained above. Additionally, a conversion claim requires that the defendant be in actual possession of the property. *See* O.C.G.A. § 51-10-1; *Carter v. Butts Cnty.*, 821 F.3d 1310, 1324 (11th Cir. 2016). The Complaint does not allege that the United States or any federal employee possesses the missing currency. Counts 15 and 16 fail.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court dismiss Counts 7 through 17 as against the United States for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6).

Dated: August 31, 2026.

THEODORE S. HERTZBERG
*United States Attorney*

*/s/ Jonathan D. Letzring*
Jonathan D. Letzring
*Assistant United States Attorney*
Georgia Bar No. 141651
75 Ted Turner Drive SW
Atlanta, Georgia 30303
Telephone: 404-581-6000
Facsimile: 404-581-6181

*Counsel for the United States, Walter Dennard, and Ja'Rad L. Hunt*

*/s/ Kathleen A. Taylor*
Kathleen A. Taylor
*Assistant United States Attorney*
Georgia Bar No. 973286
75 Ted Turner Drive SW
Atlanta, Georgia 30303
Telephone: 404-581-6000
Facsimile: 404-581-6181

*Counsel for the United States, Walter Dennard and Ja'Rad L. Hunt*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) using Book Antiqua 13-point font.

Dated: August 31, 2026.

*/s/ Jonathan D. Letzring*
Jonathan D. Letzring
*Assistant United States Attorney*
Georgia Bar No. 141651
75 Ted Turner Drive SW
Atlanta, Georgia 30303
Telephone: 404-581-6000
Facsimile: 404-581-6181

*Counsel for the United States, Walter Dennard, and Ja'Rad L. Hunt*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to such parties and counsel of record who are registered to receive electronic filing.

Dated: August 31, 2026.

*/s/ Jonathan D. Letzring*
Jonathan D. Letzring
*Assistant United States Attorney*
Georgia Bar No. 141651
75 Ted Turner Drive SW
Atlanta, Georgia 30303
Telephone: 404-581-6000
Facsimile: 404-581-6181

*Counsel for the United States, Walter Dennard, and Ja'Rad L. Hunt*