**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Cathy George,

*Plaintiff*,

v.

Ja'Rad L. Hunt, Walter Dennard, Fourteen Unknown Law Enforcement Officers, and John Does, all sued in their individual capacities; United States of America,

*Defendants*.

Case No. 1:25-cv-6059-JPB

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR CLARIFICATION OR IN THE ALTERNATIVE MOTION FOR LEAVE TO ENGAGE IN EARLY LIMITED DISCOVERY**

The initial-disclosure deadline of "thirty (30) days after the appearance of a defendant by answer or motion" has long passed. LR 26.1(A). Yet Defendants refuse to produce initial disclosures. They insist this Court's Scheduling Order excused them from that obligation. But the Order does no such thing.

This matters to Ms. George because Defendants' initial disclosures should reveal the identities of the other officers who raided her home. Ms. George sued them but cannot serve them because Defendants are keeping their names and addresses secret. Ms. George thus moved for clarification that the Scheduling Order left the local rules intact and that Defendants' disclosures

are past due and must include the unnamed defendants' identities and warrant materials Defendants have withheld. Alternatively, she asks to serve one interrogatory and one request for production seeking the same information.

Defendants' main response is that Ms. George does not need discovery to defeat the motions to dismiss. That much is true. Ms. George has refuted each argument in those motions, Docs. 59, 60, and the Court can deny them today without ordering any discovery. What the Court cannot do is take the path Defendants urge: grant their motions to dismiss on the ground that Ms. George has pleaded too little, while sealing off the only source of the allegedly missing information and denying her a chance to name the remaining defendants.

Defendants open by saying that Ms. George's "theory of the case has already shifted once," Doc. 62 at 1. They seem to suggest that Ms. George should not be allowed to amend her complaint with new information she learns—because what shifted was Defendants' disclosures. Her claims are largely the same, and so is her basic account of the raid. She still alleges that officers were seeking Joshua Smiley: officers asked her about Smiley and showed her his photograph. Doc. 28 ¶¶ 31–78. She learned from Defendants, months into this case, that a warrant existed and named someone else. She then pleaded in the alternative to account for the officers' compounded errors: not only were at least some officers looking for Joshua Smiley, who had no connection to Ms. George and who was already in custody, but officers had a warrant for another

Joshua (Joshua Stokes), who also had no connection to Ms. George. That alternative pleading is precisely the form Rule 8 prescribes when the facts that would resolve the alternatives lie in someone else's hands. Fed. R. Civ. P. 8(d)(2)–(3). It is no reason to deny Ms. George the officers' identities.

Finally, Defendants say they would not oppose extending the Rule 4(m) period until 60 days after the Court rules on the motions to dismiss. Doc. 62 at 3–4. In other words, while Defendants fault Ms. George for not serving the unnamed officers sooner, Doc. 62 at 15–16, they say she should have to wait longer to learn who they are. Their sequence would postpone and replicate the same work rather than avoid it. *See infra* Part II.

## ARGUMENT

### I. Defendants press both halves of their Catch-22 argument.

Defendants argue that Ms. George's complaint should be dismissed because it lacks information that, they contend, she should not be allowed to get. Defendants now say this Catch-22 "misses the mark" because "[t]he problem with the First Amended Complaint is not a lack of names," Doc. 62 at 13, but that the complaint "does not allege which officers committed which actions" during the raid, Doc. 50 at 18. But Defendants' reframing merely restates their Catch-22 position. Defendants insist that Ms. George must replead with defendant-specific allegations, Doc. 50 at 19, and yet they contest her ability to obtain the very information she needs to do that.

Ms. George disagrees that she must plead with greater specificity. But because Defendants insist on such a heightened standard, her proposed interrogatory asks them to identify who took part in the raid and to "specify each individual's participation." Doc. 56 at 2–3. Defendants oppose that, too. Their position is wrong for two reasons.

*First*, the Rule 8 pleading standard does not require Ms. George to say at this stage which officer struck which blow. "The fact that defendants are accused collectively does not render the complaint deficient" where, as here, the complaint "can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (CA11 2000). As the Eleventh Circuit explained in *Saunders v. Duke* (which is conspicuously absent from Defendants' response), a plaintiff who alleges that one of several officers did something "can plead in the alternative and pursue discovery to uncover the identity" of the officer responsible. 766 F.3d 1262, 1268 n.2 (CA11 2014). And the rule Defendants urge "would effectively allow police officers to violate constitutional rights with abandon as long as they ensured they could not be individually identified." *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 877 (N.D. Ill. 2019) (quotation citation omitted).

*Second*, Defendants say Ms. George "could have described each officer she saw by sex, race, build, clothing, or role." Doc. 62 at 3. But she described what she could. Officers in SWAT gear ambushed her at home before dawn,

pounded on her door, aimed firearms at her, ordered her out before she could dress, questioned her, and left with $15,000 from her underwear drawer. Doc. 28 ¶¶ 31–78. She described what they wore, as Defendants say she should, Doc. 62 at 13, including the "SHERIFF" markings that are significant for her claims under 42 U.S.C. § 1983. Doc. 28 ¶¶ 78–80. The security footage Defendants invoke shows officers entering a parking garage and passing through an elevator corridor; it does not show the raid, because—at least according to Defendants—there is no body-camera footage of it. Ms. George's failure to catalogue the physical features of a dozen armed strangers during the minutes they were seizing her is not a pleading defect.[1]

That leaves Defendants' response that "[a] list of names would not change" the group-pleading objection. Doc. 62 at 13. As already explained, Ms. George has not engaged in improper group pleading. Names, along with addresses, would allow her to serve the officers. And in case the Court agrees with Defendants that Ms. George's complaint needs more precision about what each officer did, her interrogatory asks for each officer's role—information that only Defendants have. Doc. 56-1 at 25. Defendants' fallback proposal—"name

[1] Defendants also suggest that the Amended Complaint quietly added an officer, because it names Officer Dennard while still alleging fourteen unknown officers. Doc. 62 at 4 n.2. The complaint did not add to the number of officers. Nothing in the warrant or the affidavit says whether Dennard was among the officers who came to Ms. George's home. He may have been one of the fourteen.

and work address" alone, Doc. 62 at 18 n.4—would permit service and would be enough if the Court agrees with Ms. George that her complaint pleads with sufficient particularity.

## II. The threshold questions Defendants identify do not make the officers' identities irrelevant.

Defendants list five questions that they call purely legal and dispositive and which the Court can address without discovery. Doc. 62 at 2. But the important thing about Defendants' list, for purposes of Ms. George's motion, is that it does not make immediately "clear" that all Ms. George's claims against the unnamed officers are doomed, such that serving them would be pointless. Doc. 62 at 6 (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)).

### A. Color of law.

Defendants argue that whether § 1983 reaches Officers Hunt and Dennard is ultimately a legal question. True. But that legal question turns on facts. And at this stage, those facts—and every reasonable inference from them—must be construed in Ms. George's favor. Defendants have produced a warrant issued from a Georgia court, sought by "a Georgia certified peace officer," and directed to "all Georgia certified peace officers." Doc. 56-1 at 21. Officer Hunt was a county Sheriff's Deputy, and the raiding officers wore "SHERIFF" gear. Doc. 28 ¶¶ 14, 78. The inference that these officers exercised state authority is not merely available; it is an inference the Court must draw for now.

Defendants respond that if Ms. George is right about what color of state law means, she "will defeat the argument without discovery," and if she is wrong "discovery cannot rescue a deficient complaint." Doc. 62 at 15. Defendants are correct that Ms. George's § 1983 claims can defeat the motions to dismiss without discovery. Indeed, her § 1983 claims should proceed with or without the information she seeks. Defendants' assertion that discovery cannot rescue a deficient complaint is harder to understand—because Defendants advance a pleading standard that no plaintiff in Ms. George's shoes could be expected to meet without the very discovery Defendants resist.

### B. The FTCA, the Westfall Act, and *Bivens*.

Defendants' arguments in their motions to dismiss concern the United States and two cross-deputized officers: Defendants Hunt and Dennard. Those arguments—even if correct (and they are not)—say nothing about the unnamed officers, who acted under color of state law. Defendants rightly do not argue otherwise. A § 1983 claim against a sheriff's deputy is not an FTCA claim or a *Bivens* claim, and no Westfall certification can immunize an officer who acts under color of state law. That is why *Yarullina v. United States*, 770 F. Supp. 3d 205 (D.D.C. 2025), does not aid Defendants. That case did not involve § 1983 claims—only claims against officers who indisputably acted with federal authority alone.

Nor are Defendants' arguments against Ms. George's FTCA, *Bivens*, and

Westfall Act claims ironclad. Defendants rely on *Martin v. United States*, 2026 WL 3015490 (CA11 Oct. 7, 2026), for its holding on the FTCA's discretionary-function exception. Doc. 62 at 8. But Defendants have ignored the same panel's *Bivens* holding, reversing a grant of qualified immunity and allowing a *Bivens* claim to go forward. *Martin*, 2026 WL 3015490, at *13–14. The United States has told this Court that what happened to Ms. George was "no different than the warrant execution[] in *Martin*." Doc. 50 at 16. With that position, Defendants may not take the part of *Martin* they like and pass over the rest.[2] Doc. 62 at 11. Defendants likewise never engage with Ms. George's textual and historical arguments about the Westfall Act. See Doc. 62 at 8–9. Even as to federal officers, then, these claims are not doomed—much less clearly so.

**C. Timeliness.**

Defendants say that any claims against newly named officers would be time-barred, so naming those officers would be futile. Doc. 62 at 14, 16. Their

[2] *Martin*'s discretionary-function exception holding is poised for en banc review. All three members of the panel opined that the circuit precedent they were bound to apply "is not grounded in the text of the exception" and "is also untethered from the circumstances presented in [*United States v.*] *Gaubert*[, 499 U.S. 315 (1991)]." *Martin*, 2026 WL 3015490, at *16 (Jordan, J., concurring, joined by Prior and Kidd, JJ.). And all three panelists expressed "hope" that the en banc court will "reexamine our discretionary-function exception jurisprudence." *Id.* at *19. The Institute for Justice, which represents the plaintiffs in *Martin* and Ms. George here, and plans to file a petition for rehearing en banc in *Martin* next week. A federal agent in *Martin* has moved for an extension of time to file a petition for rehearing en banc, as well.

whole argument rests on one proposition, drawn from Rule 15(c)(1)(C) and *Wayne v. Jarvis*: that ignorance of a name is not a "mistake" allowing relation back. 197 F.3d 1098, 1103 (CA11 1999). Maybe so, but that argument is not dispositive here.

Defendants have failed to address, and cannot refute, all Ms. George's arguments for why the claims against Dennard are timely—arguments that apply equally to the unnamed defendants. *See* Doc. 59 at 21–23. In short, Rule 15(c)(1)(A) permits relation back whenever "the law that provides the applicable statute of limitations allows" it. And under O.C.G.A. § 9-3-96, a defendant who has "debarred or deterred" a plaintiff from suing cannot count the time before discovery as running down the statute-of-limitations clock. This tolling rule makes the claims against Dennard and the unnamed officers timely. *See* Doc. 59 at 21–23. Defendants also (rightly) do not argue that the trover and conversion counts are untimely; those carry a four-year limitations period. O.C.G.A. § 9-3-32; *see* Doc. 59 at 21. At bottom, not even Defendants contest that at least *some* claims against the unnamed officers would be timely.

**D. Judicial economy.**

Defendants say that deciding the motions to dismiss first will at least narrow the case. Doc. 62 at 10. But it will not eliminate the need for the minimal discovery Ms. George seeks. Her various claims rest on one set of events. If her case proceeds at all (and it should, for the reasons she has explained

before), the people who raided her home and the warrant materials they had are relevant and discoverable. The question is not whether this information comes out but when. Defendants all but concede as much by not opposing an extension of the Rule 4(m) deadline. Doc. 62 at 3–4.

But the efficient course runs the other way, as the United States itself has argued elsewhere. *See* Miller 2d Decl. ¶ 6, Ex. 1 (counsel for the United States explaining that "it would be most efficient to respond to any operative complaint addressing all claims versus proceeding piecemeal," and, on that basis, seeking to defer its response until the Doe defendants are identified). With the names and addresses, Ms. George amends the complaint, serves everyone, and all the defendants raise their defenses in a consolidated round of briefing. Without the names and addresses, the Court rules on this pleading, Ms. George names officers later, a new complaint moots the current briefing, the defendants file another round of briefing, and the Court does the same work twice.

## III. Qualified immunity does not bar Ms. George's interrogatory—and Defendants concede as much.

Defendants invoke *Harlow* and *Hunter* for the proposition that immunity questions must be resolved before any discovery. Doc. 62 at 11–12. But neither *Harlow* nor *Hunter* establishes as much. While qualified immunity should be resolved "at the earliest possible stage," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam), the earliest possible stage is usually summary judgment,

*see Giragosian v. Bettencourt*, 614 F.3d 25, 29 (CA1 2010). *Hunter* itself arose on summary judgment, after discovery. *Hunter*, 502 U.S. at 226, 229. And the same page of *Harlow* that Defendants quote explains the object of the rule they invoke: to "permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Officers Hunt and Dennard say they should face no discovery until their immunity defenses are resolved. But immunity is no excuse for withholding past-due initial disclosures, and the burden here is minimal and unavoidable. One interrogatory about who was present is as narrow as discovery gets.[3] *See Crawford-El v. Britton*, 523 U.S. 574, 597–98 (1998) (observing that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery" in a way that effectively "protects the substance of the qualified immunity defense").

*Howe v. City of Enterprise* does not dictate otherwise. 861 F.3d 1300 (CA11 2017). The Eleventh Circuit panel left in place the district court's order denying without prejudice officers' motion to dismiss on immunity grounds and directing the plaintiff to amend his complaint again. The panel explained that

---

[3] *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (CA11 1997), is not to the contrary. Doc. 62 at 7. It concerned sprawling merits discovery pressed while a dispositive motion on a dubious claim sat undecided. *Id.* at 1367–68. It did not address discovery whose only object is to bring absent parties before the court.

"responding to [the plaintiff's] second amended complaint is not a burden of litigation from which the immunity doctrines protect them." *Id.* at 1303 n.1. Neither is answering Ms. George's interrogatory. Even as nonparties they would be answerable to a subpoena for the same information. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1210–12 (CADC 2020).

In any event, the United States has no qualified immunity. If the Court has any concern about burdening the individual officers, it can direct the interrogatory to the United States alone—with leave to serve it on Officers Hunt and Dennard if the United States answers that it does not know who the officers are. Defendants propose precisely that: if the Court is "not persuaded" that amendment is futile, "it should permit a single interrogatory on the United States asking for the name and work address of each officer who took part in the search of her residence." Doc. 62 at 18 n.4.

## IV. The Doe Defendants are described well enough to be served.

Defendants argue that fictitious-party pleading is permitted only when the description is "clear enough to allow service," citing *Vielma v. Gruler*, 808 F. App'x 872, 880–81 (CA11 2020). Doc. 62 at 7 n.3. *Vielma* is unpublished and not binding. 11th Cir. R. 36-2.

The binding authority runs the other way, beginning with the case that gives Defendants' arguments their name. The *Bivens* plaintiff could not name the agents either. The district court "ordered that the complaint be served upon

those federal agents who it is indicated by the records of the United States Attorney participated in the November 25, 1965, arrest of the [petitioner]." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390 n.2 (1971). "Five agents were ultimately served." *Id.* The government's own records supplied what the plaintiff could not.

*Dean v. Barber*, 951 F.2d 1210 (CA11 1992), is to the same effect, and the Eleventh Circuit has not confined it as Defendants suggest. In *Saunders*, the court cited *Dean* for the proposition that a plaintiff may join a John Doe defendant whose identity discovery would reveal. 766 F.3d at 1268 n.2.

The Doe defendants here are not imaginary or vague; they are officers who searched her apartment at the Serrano Condominiums on October 24, 2023. That is a finite and documented group. The obstacle to service is not the description. It is that the parties who can match the description to names refuse to do so. Courts routinely remove that obstacle. In a similar posture—a mistaken-identity raid, a plaintiff who could name no officer, and the United States as the only served defendant—the court in *McCarthy v. United States* permitted early discovery into the officers' identities, and the officers were named and served. No. 2:25-cv-02005-ROS-MTM (D. Ariz.), Doc. 17 at 6 (Feb. 27, 2026). That order delayed no one's threshold defenses; the officers all moved to dismiss on a single briefing schedule.

Refusing Ms. George the ability to name the officers and dismissing her

case in the same stroke would be improper. The Eleventh Circuit vacated such a refusal in *Dean*, 951 F.2d at 1215–16, and other courts have called it an abuse of discretion to dismiss without affording a plaintiff the "opportunity through discovery to uncover the identities of the 'John Doe' defendants." *Gillespie v. Civiletti*, 629 F.2d 637, 643 (CA9 1980).

## V. The Scheduling Order requires clarification.

Defendants' reading of the July 2 Order depends on a characterization the Order does not contain. They say the Court "denied Defendants' first stay request as premature." Doc. 62 at 17. The Order says no such thing. It says that "a stay is not appropriate at this stage in the proceedings" and that "a stay is not warranted as to the remaining pretrial deadlines, which includes initial disclosures." Doc. 37 at 1–2 n.2. Defendants cite nothing for the gloss they place on it. And if Defendants' gloss were correct, the Court would not have ordered a Joint Preliminary Report and Discovery Plan under Local Rule 16.2. The First Amended Complaint had been filed the week before and no responses to that complaint had yet been filed. Still, the Court ordered the report because a defendant had "filed a motion to dismiss on March 13, 2026." Dkt. Entry June 23, 2026. The July 2 Order that followed left Local Rule 26.1 untouched.

## VI. The timing and breadth objections fail.

Defendants ask why Ms. George did not move sooner. Doc. 62 at 15–16. The answer is that Defendants disclosed information in increments, and each

increment changed what was left to ask for. Counsel for Officer Hunt said she did not know the other officers' names. Doc. 56-2 (Canter Decl. ¶ 4, Ex. D at 44–47). Defendants then revealed that a warrant existed, produced it—disclosing Officer Dennard—and finally filed the probable-cause affidavit they had refused to produce. Doc. 56-3 (Miller Decl. ¶¶ 7, 10, 16). Ms. George waited for those filings so that she would not ask this Court for material Defendants were about to supply. *Id.* ¶ 16. The motions came; the names did not. She moved.

As for breadth, the request for production seeks the remainder of a discrete warrant file from which Defendants have already produced two documents. Doc. 56 at 3. If Defendants have already produced the whole file, they need only say so.

## CONCLUSION

Ms. George asks this Court to clarify that Defendants' initial disclosures are past due and to order them served within 14 days; or, in the alternative, to grant leave to serve the proposed interrogatory and request for production. At a minimum, the Court should order the single interrogatory Defendants themselves propose, Doc. 62 at 18 n.4, and direct that the answer identify each officer's name, address, and role in the raid.

Dated: November 12, 2026.

/s/ Andrew Canter
Andrew Canter
Georgia Bar No. 365212

Zack Greenamyre
Georgia Bar No. 293002

MITCHELL, SHAPIRO,
GREENAMYRE & FUNT LLP
881 Piedmont Ave.
Atlanta, GA 30309
404-812-4747 (phone)
404-812-4740 (fax)
zack@mitchellshapiro.com
andrew@mitchellshapiro.com

/s/ Marie L. Miller
Marie L. Miller*
Indiana Bar No. 34591-53
Arizona Bar No. 040537
INSTITUTE FOR JUSTICE
3200 N. Central Ave. Ste. 2160
Phoenix, AZ 85012
(480) 557-8300
mmiller@ij.org

John C. Korevec*
California Bar No. 310157
INSTITUTE FOR JUSTICE
901 N. Glebe Rd. Ste. 900
Arlington, VA 22203
(703) 682-9320
jkorevec@ij.org

*Admitted *pro hac vice*

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 5.1(C), this document was prepared in Century Schoolbook font (13-point type).

/s/ Marie L. Miller
Marie L. Miller
Indiana Bar No. 34591-53
Arizona Bar No. 040537
INSTITUTE FOR JUSTICE
3200 N. Central Ave. Ste. 2160
Phoenix, AZ 85012
(480) 557-8300
mmiller@ij.org

*Counsel for Plaintiff*

## Certificate of Service

I hereby certify that on November 12, 2026, I electronically filed the foregoing Plaintiff's Reply in Support of Her Motion for Clarification or in the Alternative Motion for Leave to Engage in Early Limited Discovery with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

/s/ Marie L. Miller
Marie L. Miller